Johnson, Chief Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable over the prior art claim 4, the only remaining claim in appellant’s application for a patent on a “Clothes Closet Pole.”
The features of the alleged invention are readily apparent from a consideration of claim 4, which reads as follows:
A clothes closet pole assembly comprising an extensible rod, and means disposed at each end of said rod for supporting said rod, said means comprising a *702 hanger including a bracket having a cnp secured to one end thereof, one end of said rod seating in said cup, said cup having an air vent in the bottom thereof for dissipating air imprisoned within said rod.
The references relied upon are:
Pederson, 744,701, Nov. 17, 1903.
Carlson, 1,764,931, June 17, 1930.
The Carlson reference discloses a closet pole assembly comprising a hollow, extensible closet pole and two hangers to each of which is secured a supporting;cup which is adapted .to receive an end of the extensible pole.
The Pederson reference discloses a clothing hanger comprising a hollow rod slidably mounted in telescopic fashion on a horizontal rod supported at one end. The outer end of the hollow rod is closed by a cap, the opposite end of the horizontal rod being also closed. The upper side of the hollow rod is provided with an air vent adjacent the outer end thereof to prevent entrapped air from hampering the movement of said hollow rod either inwardly or outwardly.
The board sustained the examiner’s rejection of claim 4 as being unpatentable over Carlson taken alone or in view of Pederson. It was the examiner’s contention that the novelty, if any, which'resides in appellant’s closet pole is in the use of the air vent in the supporting cup, the other elements of appellant’s apparatus being clearly shown by Carlson. Noting that, as described in appellant’s specification, the closet pole is assembled by first mounting the supporting means and subsequently extending the ends of the rods into their respective cups, the examiner stated:
* * * When employing such manner of assembly the air vent is unnecessary and of no utility for the following, reasons: Rod 28 is open at its opposite ends during extension of the rod toward the cups 26 of brackets 20 attached to cleats 14 and 16. Thus no rarefaction of. the air in the tubular rod will occur during such extension. The ends of the rod 28 will be closed to entrance or escape of air when the rod' just begins to seat in both' cups 26, assuming that the fit between the cups and rod is air-tight. However even during the further extension of the rod to .complete the seating in the cups substantially no compression will occur within the rod because the decrease in the volume which the air occupied in the cup before extension of the rod will be substantially off-set by the increase in the volume which the air must occupy in the rod after extension. * * *
The examiner concluded:
* * * Moreover, even if an air vent were necessary in the Carlson device, no invention is seen in providing such means as taught by Pederson. The advantages which applicant argues will be attained by providing such air vent in the bottom of the cup of Carlson rather than in the extensible rod, in accordance with the teachings of Pederson, are obvious and expected, and if it were found that the rod location of the air vent resulted in clogging of the vent by dust, or the blowing of dust on the clothes during extension or retraction of the rod, *703 it would readily occur to one having ordinary skill in the art that such defect could be remedied by relocating the air vent in a more concealed position such as in the bottom of the cup. Moreover, from a practical standpoint, it does not appear that the location of the air vent is critical. * * *
Appellant concedes that broadly to provide an air vent in the closet pole of Carlson would not amount to invention, but argues that it is the particular location of the air vent which renders his closet pole structure patentable over the prior art. Since the Pederson reference discloses an air vent which is disposed directly on the clothing rod, it can do no more than to teach the provision of a vent opening on one of the extensible rods of Carlson. This, appellant continues, is not the equivalent of his structure.
Appellant further states:
* * * Pederson discloses [the air vent] adjacent the end of the rod, so that if the air vent is positioned in the structure of Carlson as shown in the structure of Pederson, it would be blocked off by the cup within which the end of the Carlson rod seats. If, however, the air vent were placed at some other position along the rod, then the air vent would be exposed to dust, grease, hanger paint and other clogging impurities as well as the possibility of clogging from clothes hangers themselves resting on the rod.
By placing the air vent in the bottom of the cup within which the end of the extensible rod section seats, appellant avoids any possibility of clotting [sic] this vent and not only utilizes the extensible rod as well as the cup as a means for protecting the vent from clogging but, in addition, serves as a means to position the vent in a concealed, unobtrusive position which is unaffected by handling of the rod no matter how the rod is handled, and which is unaffected by any bending, pinching, or twisting stresses occasioned on the rod by hanger weights.
In regard to the examiner’s rejection on Carlson alone, appellant appears to have abandoned his original contention that there is appreciable expansion or rarefaction of the entrapped air within the extensible rods and now asserts that the pressure within said rods will vary proportionally with the increase and decrease of the ambient temperature, necessitating the air vent which he had provided.
We have carefully considered the arguments advanced and are of the opinion that the decision of the board is sound and should not be disturbed.
Except for the provision of an air vent, appellant’s clothes closet pole does not substantially differ from that of Carlson. The examiner has adequately shown that the use of an air vent in the Carlson structure is unnecessary and produces no new or unexpected results. We are satisfied both with his reasoning and conclusions.
It is well established that mere differences between that which is alleged to be patentable and the prior art do not of themselves support patentability; the ultimate question is whether the features of the subject matter in question display inventive concept over the *704 prior art. In re Voit et al, 33 C. C. P. A. (Patents) 737, 152 F. 2d 987, 68 USPQ 206.
Appellant’s contention that the air vent is desirable and necessary due to a pressure variant resulting from changes in the ambient temperature is tenuous. Any change in temperature in a closet in which appellant’s closet pole is placed would be minute and not of such consequence as would cause any appreciable change of pressure of the air entrapped within said pole.
Were we to assume, arguendo, that an air vent were desirable in the Carlson structure, we would nevertheless be constrained to conclude that appellant’s contribution to the art was of no patentable moment. It would be an idle task for this court to add to what has been sufficiently discussed in the aforequoted rejection of the examiner as to this contention. Appellant’s argument that the incorporation of the Pederson air vent in the closet pole of Carlson would not produce the results obtained by his particularly located vent is apparently based upon the assumption that the disclosures of two or more prior art references may not be combined to negative invention unless they are bodily incorporated into the disclosures of the primary reference. Upon both precedent and reason, such a proposition could not be accepted by this court as being declaratory of the law. Suffice it to say that it is adequate to negative patentability if one skilled in the art, having the teachings of the references before him, is able, without the use of the inventive faculty, to produce the subject matter recited in the claim. In re Twomey et al, 42 C. C. P. A. (Patents) 742, 218 F. 2d 593, 104 USPQ 273.
For the foregoing reasons, the decision of the Board of Appeals is a-ffirmed.
Jackson, J., Retired, recalled to participate in place of Cole, J., absent because of illness.
Worley, J., was not present at the argument of this case, but, by agreement of counsel, did participate in the decision.